UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN CURTIS DONGES, | No. 2:12-cv-1526 AC |
| Petitioner, | |
| v. | ORDER |
| JOE A. LIZARRAGA, Warden, | |
| Respondent. | |

Petitioner is a former California state prisoner[1] proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Second Amended Petition, filed on January 11, 2019, ECF No. 55, challenges petitioner's 2009 conviction for residential burglary and receiving stolen property. Respondent has answered, ECF No. 62, and petitioner has filed a traverse, ECF No. 6. The case is before the undersigned pursuant to the consent of the parties. ECF Nos. 3, 14.

////

////

////

---

[1] Petitioner filed a notice of change of address in 2013, ECF No. 30, which suggested that he had been released from custody. The collateral consequences of his convictions prevent the case from being moot. See Chacon v. Wood, 36 F.3d 1459, 1463 (9th Cir. 1994).

1

BACKGROUND

I. Proceedings in the Trial Court

A. Preliminary Proceedings

Petitioner was charged in Butte County Superior Court in two separate cases arising from separate incidents. Case number CM029664 involved an initial charge of felony grand theft, later amended to include a charge of receiving stolen property. Petitioner had left items at his sister's home that had been stolen from a truck. Petitioner and Brittany Victory had been near the truck, and Victory admitted having taken the items and asking petitioner to store them. Petitioner ultimately pled no contest to receiving stolen property (Cal. Penal Code § 496) and admitted a strike prior allegation (2001 California first degree burglary) in exchange for dismissal of the remaining count and allegations.

In case number CM030090, petitioner was charged with residential burglary (Cal. Penal Code § 459). He pled not guilty. Shortly before trial, petitioner asked the court to relieve Larry Willis as his appointed counsel and appoint new counsel to represent him. The court held a hearing pursuant to People v. Marsden, 2 Cal.3d 118 (1970), at which petitioner expressed his concerns about Willis's representation and Willis responded under oath. The motion was denied.

B. The Evidence Presented at Trial in Case Number CM030090

On December 3, 2008, Theora Plude returned home and found an Isuzu parked in her driveway. Plude put her car behind the Isuzu to prevent it from leaving. Petitioner and Brittany Victory came out of Plude's house, carrying Plude's medical marijuana, medication, and other personal property, and put the items in the Isuzu. Plude confronted them and petitioner claimed he was looking for his father, who lived in the same trailer park. Plude called 911. Petitioner and Victory got into the Isuzu and petitioner backed the Isuzu into Plude's car. They then drove around a gate to flee. Later, they got stuck on an embankment. In petitioner's front pants pocket, an officer found a medication bottle with Plude's name. Petitioner claimed he had permission to enter through an unlocked door and take camping equipment. He could not explain why he took the victim's medical marijuana or her bottle of pills. Victory claimed she never went into Plude's house, although petitioner acknowledged that Victory had been inside Plude's house removing

items.  Petitioner claimed he did not know he had hit Plude's car.

C. Outcome

The jury found petitioner guilty of residential burglary in case number CM030090.  In bifurcated proceedings, the court found true a strike prior allegation (2001 California first degree burglary) (§§ 667, subds. (b)-(i), 1170.12), two prior prison term allegations (§ 667.5, subd. (b)), and an on-bail enhancement (§ 12022.1).

Sentencing was joined with case number CM029664.  Petitioner was sentenced under California's Three Strikes Law (Cal. Penal Code § 667.5), with the residential burglary conviction counting as his second strike.  Petitioner was sentenced to a total term of 17 years and 4 months.

II. Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on August 4, 2010.  ECF No. 65-7 at 25-31.[2]  The California Supreme Court denied review on October 13, 2010.  ECF No. 65-8.

Petitioner sought habeas relief during the pendency of his appeal, and those applications were denied due to their procedural posture.  Following the conclusion of the appellate process, petitioner filed a petition for writ of habeas corpus in the Butte County Superior Court that was denied on August 17, 2011.  ECF Nos. 65-14, 65-16.  Petitioner next filed a habeas petition in the California Court of Appeal, which was denied without comment or citation on September 15, 2011. ECF No. 65-19, 65-20.  Petitioner then filed a habeas petition in the California Supreme Court, which was denied on February 15, 2012.  ECF Nos. 65-21, 65-23.

Petitioner initiated the present case by filing a pro se petition in this court on June 6, 2012.  ECF No. 1.  Respondent moved to dismiss on timeliness grounds, ECF No. 18, and counsel was appointed for the limited purpose of litigating the equitable tolling issue presented by petitioner's

---

[2] The state court record filed electronically by respondent contains errors in the numbering and description of documents.  The Notice of Lodging/Filing of Paper Documents, ECF No. 65, which serves as an index to the state court record, is inconsistent with the descriptions and numbering of the documents as attachments in CM/ECF, and several of the documents are not the documents there described.  Accordingly, the undersigned cites directly to the CM/ECF location of documents without reference to Lodged Document numbers assigned by respondent.

response to the motion.  ECF No. 27.  Respondent thereafter withdrew his motion to dismiss. ECF No. 31.  The court expanded the appointment of counsel for petitioner, ECF No. 35, and an amended petition and motion to stay pending further exhaustion were filed on September 8, 2014. ECF Nos. 48, 49.  The case was stayed pursuant to stipulation of the parties, to permit petitioner to return to state court with "factually unexhausted claims."  ECF Nos. 52 at 1, 53.

On October 7, 2014, petitioner filed an exhaustion petition in Butte County Superior Court.  ECF No. 65-24.  The court denied the petition on March 2, 2015.  ECF No. 65-27. Petitioner then filed the petition in the California Court of Appeal for the Third District, ECF No. 66-1, which denied the petition on September 18, 2015.  ECF No. 65-29.  The petition was submitted to the California Supreme Court on December 19, 2016.  ECF No. 65-30.  Following informal briefing, the California Supreme Court denied relief on the merits on December 12, 2018.  ECF No. 65-36.

The stay of federal proceedings was lifted, and case proceeded on the Second Amended Petition filed on January 11, 2019.  ECF Nos. 55, 59.  That petition has been fully briefed.  See ECF Nos. 62 (answer), 66 (traverse).

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99 (2011).  State court rejection of a federal claim will be presumed to have been on the merits

4

absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and

5

subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

## DISCUSSION

I.       Claim One: Ineffective Assistance of Appellate Counsel

    A.  Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that appellate counsel was ineffective in failing to challenge on appeal the trial court's denial of petitioner's Marsden motion.[3]  The pertinent facts are as follows. Shortly before trial, petitioner asked the court to relieve Larry Willis as his appointed counsel and appoint new counsel to represent him.  Petitioner raised several complaints about Willis' representation, including that he had not subpoenaed any witnesses for trial, had not interviewed any witnesses, had not filed for reduction of bail or sought to strike priors, had not sought a lineup or fingerprint evidence, and had not followed up on  mental health issues which were apparent from petitioner's recent detention under Welfare & Institutions Code§ 5150.  ECF No. 48-1 (transcript of Marsden hearing) at 2-6.  Petitioner also claimed that Willis had "brought up my name in open court on another unrelated inmate's case," and had accused petitioner of slandering him and saying that he was a bad lawyer.  Id. at 7.

Petitioner also told the judge:

> I don't have any problem with [Willis] personally and he just came at me right now saying that if I take a poke at him I'll be getting elder abuse ... I couldn't believe he said that to me really. It makes me scared to even be around him. He could say anything. He could say I threatened him. He could say anything. I get a third strike. I really don't want him as my attorney anymore.

Id. at 7.

Willis responded to petitioner's concerns under oath.  Willis stated that he had read the case files and reviewed the preliminary hearing transcript.  He did not think a lineup was warranted as the victim knew petitioner personally, and identity was therefore not a genuine issue in the case.  Fingerprints (which apparently related to case number CM029664) were "somewhat superfluous" because the items recovered had been removed from petitioner's truck.  Willis had

---

[3]  See People v. Marsden, 2 Cal.3d 118 (1970).

6

not pursued the evidentiary issues that petitioner was focused on because the "wrong-guy defense isn't going to work." Willis also stated that a <u>Romero</u> motion[4] was premature and a motion for bail reduction would be frivolous. He was still debating about the possibility of interviewing witnesses, but was unaware of any potential witness who would be favorable to petitioner's defense. <u>Id.</u> at 9-11, 13-16. Petitioner had been adamant that "this was all the responsibility of the co-defendant," but counsel had sent an investigator to interview Ms. Victory and learned she intended to testify against petitioner. <u>Id.</u> at 10; <u>see also</u> <u>id.</u> at 14-15 ("There's no witnesses that would be favorable to the defense… I'm not going to subpoena a witness that's hostile to my case.").

Willis said that he was hearing about petitioner's mental health detention for the first time, and would "of course" look into it. He noted, however, that mental health evidence would be of limited value to the defense because all charges were general intent crimes and Willis had seen no indication that there was any basis for an insanity plea or a doubt as to competence. <u>Id.</u> at 15-16.

Willis also addressed petitioner's claim that he had threatened petitioner with elder abuse charges:

> We did discuss the issue of physical violence towards your lawyer, since he brought it up, for a couple of reasons. Ever since I've met Mr. Donges, he's been trying to get rid of me to delay this trial. He's talked to a couple of other lawyers, can't come up with the money, we have this. He's done everything he can to, to get rid of me as his lawyer. I, frankly, advised him as I think is probably part of my duty, that if he wants to take it one step further --- and also, he was sent to CRC in the late 90's, he was excluded for attacking other inmates. At least that's what's on the face of the record. I just wanted to point out to him, A, I'm an old man, technically an elder; and (B), as a matter of policy, if one of our inmates decides they want to attack us, that that would not be grounds for a change of attorney. It probably would get him shackled at trial, but it would not, not cause me to withdraw as his attorney. And that was based on what I read of his record in the, in the file through this court and just to try to avoid, avoid any such situation. Certainly wasn't meant as a threat. Mr. Donges has not threatened me, but he's tried everything else to get rid of me to delay this case. So I just wanted to let him know it wasn't going to work. So yeah, I did tell him that. And the same circumstances would probably tell other clients and have told other

---

[4] <u>See</u> <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 497 (1996) ((holding the sentencing court has the power under the Three Strikes Law to dismiss one or more prior "strikes" in the interest of justice).

7

>clients the same thing, that that isn't going to work, so why bother.
>... It's nothing personal.

Id. at 11-12.

The trial court found that Willis was credible and to the extent that petitioner's testimony and Mr. Willis's were in conflict, the court believed Mr. Willis. The court found that Willis was "looking at this" in a dispassionate and professional manner, and that he had properly represented petitioner thus far and would continue to do so. The court expressly found that "there has not been a breakdown in the relationship between Mr. Donges and Mr. Willis" and denied the motion for new counsel. The court did not specifically address any particular issue that had been raised and discussed at the hearing. Id. at 20.

Denial of petitioner's Marsden motion was not asserted as error by appointed appellate counsel. Petitioner argues that the failure to raise the issue was unreasonable and prejudiced him.

### B. The Clearly Established Federal Law

A criminal defendant enjoys the right to the effective assistance of counsel on appeal. Evitts v. Lucey, 469 U.S. 387, 391 (1985). Claims of appellate ineffectiveness are evaluated under the framework of Strickland v. Washington, 466 U.S. 668 (1984). Smith v. Robbins, 528 U.S. 259, 285 (2000). Under Strickland, the Sixth Amendment is violated when (1) counsel's representation falls below an objective standard of reasonableness, and (2) the defendant is prejudiced by the unreasonable performance. Strickland, 466 U.S. at 692, 694. To demonstrate prejudice in the appellate context, petitioner must show a reasonable probability that he would have prevailed on appeal absent counsel's alleged errors. Smith, 528 U.S. at 285-286.

### C. The State Court's Ruling

The California Supreme Court summarily denied the exhaustion petition "on the merits," with an unexplained citation to Harrington v. Richter, 562 U.S. 86, 99-100 (2011). ECF No. 65-36.

### D. Objective Reasonableness Under § 2254(d)

Because the state court rejected the claim on the merits but without a reasoned opinion, this court's review of that decision proceeds according to Richter, 562 U.S. at 102 (when a state

1    court denies a claim on the merits but without a reasoned opinion, the federal habeas court must
2    determine what arguments or theories may have supported the state court's decision, and subject
3    those arguments or theories to § 2254(d) scrutiny).

4    The state court could reasonably have rejected the claim of appellate ineffectiveness on
5    the performance prong of Strickland.  Appellate counsel has no constitutional obligation to raise
6    even non-frivolous issues which, in counsel's judgment, have little or no likelihood of success.
7    Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  To the contrary, winnowing out weak arguments
8    on appeal is a hallmark of effective advocacy, not an indicator of ineffectiveness.  Smith v.
9    Murray, 477 U.S. 527, 536 (1986); see also Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir.
10   1989).  The presumption of effective appellate advocacy is overcome only where the omitted
11   issues are "clearly stronger" than those presented on appeal.  Smith v. Robbins, 528 U.S. at 288.

12   Given this standard, denial of the claim by the state courts was not objectively
13   unreasonable.  The trial court's denial of the Marsden motion was based on its factual findings,
14   which are entitled to a deferential standard of review on appeal.  The trial court explicitly found
15   Willis, not petitioner, to be credible.  The court accepted Willis's explanations for the acts and
16   omissions that petitioner challenged.  As to petitioner's claim that Willis had threatened him with
17   elder abuse charges and that he was therefore afraid of Willis—the assertion on which petitioner
18   primarily relies here for his theory that there had been a complete and obvious breakdown of the
19   attorney-client relationship, such that it was error to deny the Marsden motion—the trial court
20   implicitly accepted Willis's explanation that he had merely let petitioner know that any attempt to
21   get Willis off the case by becoming physically aggressive would backfire.  The record of the
22   Marsden hearing can plausibly be interpreted to reflect an implicit finding that petitioner was not
23   actually afraid of Willis.[5]

---

[5] Petitioner argues that his statement "It makes me scared to even be around him" constitutes undisputed evidence of fear, creating an actual conflict that required substitution of counsel. This court disagrees. Given Willis's testimony about the history of the attorney-client relationship and the context of the exchange regarding elder abuse, and the trial court's express credibility determination, it appears that the judge accepted Willis's account that petitioner would say whatever it took to achieve Willis's removal and a resulting delay of trial. In other words, the (continued…)

On this record, reasonable appellate counsel could easily have concluded that the Marsden issue was not worth pursuing. This is simply not a case in which "the record clearly show[ed] . . . that defendant and counsel [had] become embroiled in such an irreconcilable conflict that ineffective representation [was] likely to result." People v. Smith, 30 Cal. 4th 581, 604 (2003). Omitting the claim therefore cannot have been an unreasonable strategic decision by appellate counsel.

Moreover, petitioner cannot establish prejudice from the omission. Prejudice from appellate ineffectiveness turns on the merit of the issue that counsel failed to pursue. Smith v. Robbins, 528 U.S. at 285-286. Here, there is no reasonable likelihood that plaintiff would have prevailed had the Marsden ruling been challenged. On direct appeal of a denied Marsden motion, California appellate courts apply the harmless error standard required by Chapman v. California, 386 U.S. 18 (1967). People v. Loya, 1 Cal. App. 5th 932, 945 (2016). Accordingly, *even if* the appellate court found or assumed that the Marsden motion was denied in error, petitioner could only have obtained relief had the court found further that his right to effective assistance at trial was violated by Willis's continued representation. Petitioner has identified nothing about the trial itself – other than the Romero issue addressed next – suggesting that Willis rendered actual ineffective assistance.

For these reasons, it was not objectively unreasonable for the California Supreme Court to deny this claim. Federal habeas relief is therefore unavailable.

II.     Claim Two: Ineffective Assistance of Trial Counsel

   A.   Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his Sixth Amendment right to the effective assistance of counsel was violated by trial counsel's failure to investigate and present mental health evidence in support of a Romero motion.[6] Counsel did bring a Romero motion to strike the finding of petitioner's

---

record permits an inference that the trial court rejected on credibility grounds petitioner's claim that he was "scared" of Willis. Accordingly, appellate counsel could reasonably have concluded that this issue would be unlikely to succeed. In any event, denial of the appellate ineffectiveness claim on this basis is not objectively unreasonable.

[6] See People v. Superior Court (Romero), 13 Cal.4th 497 (1996) (holding that the sentencing (continued…)

10

prior residential burglary and sentence him outside the Three Strikes Law. Clerk's Transcript on Appeal ("CT") 149-153.[7] The motion emphasized the non-violent nature of the offenses of conviction and argued that petitioner's criminal history involved only "minor to moderate theft offenses, with a minor history of drug abuse." CT 151. The motion continued:

> Of particular significance is the material attached to the probation officer's report outlining the serious mental health issues that Mr. Donges had to deal with in the summer before any of these crimes took place. It should be well within this court's experience that the type of mental health issues that he was dealing with do not resolve quickly and that it frequently takes a great deal of time and experimentation by mental health professionals before appropriate medications, without unacceptable side effects, can be prescribed and the patient stabilized. In the meantime, there is frequently bizarre behavior while trying to get the patient medically stable. Certainly Mr. Donges' mental health does not rise to the level of a defense or something such as NGI, the evaluation that the court is being called upon to make is what relevant factors have intervened between the prior strike and the current offenses. Developing a clinically significant mental health condition would be just such a factor.

CT 151-152.

At hearing on the motion, counsel argued:

> There is a couple of factors. First of all, Mr. Donges by his past history is basically a minor league sneak thief. I don't think he's the kind of serious or violent – certainly not violent criminal that the – that the legislature or the electors intended to lock up for extended periods at great expense and so forth.
>
> Certainly the other factor that I ask the Court to consider was that at the time that this particular set of crimes occurred Mr. Donges was just coming off a 5150. He'd been put on medication, hasn't been stabilized on that medication, I think certainly not to the extent of a defense but was having issues – serious mental health issues throughout that period of time.

ECF No. 48-3 (transcript of sentencing proceeding) (Petitioner's Exhibit C) at 7.

The prosecutor's argument in opposition included a dig at petitioner's "hutzpah" in claiming that "his current use of drugs has made him crazy – or not in light of the level of defense but has made him 5149 and three quarters." Id. at 8.

---

court has the power under the Three Strikes Law to dismiss one or more prior "strikes" in the interest of justice).

[7] ECF No. 65-2 at 197-201.

The trial court denied the Romero motion from the bench, without explanation or any comment as to the issues presented. Id. at 13.

Petitioner alleges and respondent does not dispute that counsel had conducted no independent investigation into the nature or breadth of petitioner's mental health issues. Nor did he obtain any expert opinion to support his assertion that petitioner's mental health issues were not "stabilized" and resulted in "bizarre behavior." In an attempt to establish prejudice from counsel's failure to investigate and present additional mental health evidence, petitioner presents documentation of his mental health history and an expert declaration addressing (among other things) the relationship between his drug abuse and his mental illness. See Petitioner's Exhibit D (Declaration of Natasha Khazanov, Ph.D.); Exhibit E (California Department of Corrections and Rehabilitation Medical and Mental Health Records); Exhibit F (Butte County Jail Medical and Mental Health Records); Exhibit G (declarations and statement of undisputed facts from Donges v. Durrett, Case No. 2:09-cv-00360 LKK DAD, a prisoner civil rights lawsuit arising from petitioner's pretrial detention in Butte County).

Petitioner summarizes this evidence as follows:

> Petitioner has suffered for many years from depression, anxiety, post-traumatic stress disorder, suicidal ideation and Bipolar II disorder with psychotic features. Records reveal he has been, intermittently, medicated for these issues. Testing reveals consistent evidence of neuropsychological dysfunction, including impairments related to problem solving, memory, abstract reasoning skills, mental flexibility, and sustained and divided attention. These types of brain deficits include behavioral effects such as decreased initiative and productivity, impulsivity, over-reactivity, poor emotional control, difficulty inhibiting inappropriate or unwanted responses, diminished frustration tolerance difficulties making mental or behavioral shifts, deficient judgment and self-awareness and other problems. His drug use and addiction are likely the result of his self-medicating untreated mental illness.

ECF No. 55 at 13. Petitioner alleges that this evidence was available at the time of the Romero motion and argues that it would likely have affected the outcome of that motion.

### B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of

reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

### C. The State Court's Ruling

Because the state court rejected the claim on the merits but without a reasoned opinion, this court's review of that decision proceeds according to Richter, 562 U.S. at 102. The bottom line is whether denial of the claim was objectively unreasonable in light of the clearly established federal law. Id.

### D. Objective Reasonableness Under § 2254(d)

The state court's ruling can only be disturbed if it constitutes an "objectively unreasonable" application of Strickland, and Strickland itself required the state court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct." Strickland, 466 U.S. at 689. Thus, review under § 2254 requires a double dose of deference. Richter, 562 U.S. at 105.

It would not have been objectively unreasonable for the state habeas court to conclude that the presumption of reasonable attorney performance had not been overcome in this case. The state court may reasonably have concluded that a full mental health investigation and expert evaluation was not necessary in this case for the limited purpose of a Romero motion.[8] Trial counsel did argue that petitioner's mental problems mitigated his offenses of conviction and past criminal history, and thus supported the discretionary striking of a prior "strike" conviction in the interests of justice. It must be presumed under Strickland that counsel determined that the mental

---

[8] There was no other reason to conduct such an investigation, as the charged crime did not include a specific intent requirement and counsel saw no basis for an insanity plea or competency proceedings.

health information in the probation report was adequate for <u>Romero</u> purposes, and that counsel made a professional judgment that a full mitigation investigation and employment of a retained expert was unlikely to make a difference in this context.  That judgment requires deference unless the presumption of reasonable performance is overcome, and petitioner has not done so.  Petitioner's arguments about the significance of the expanded mental health record might be persuasive in other contexts in which a defendant's mental state is in issue, but they do not provide any basis for a conclusion that success on a <u>Romero</u> motion depends on the thoroughness of a defense mental state investigation.

For similar reasons, the state habeas court could reasonably have denied this claim for lack of prejudice.  The sentencing court rejected petitioner's theory that mental illness and drug addiction supported sentencing outside the Three Strikes regime, and the record does not support a conclusion that the result would likely have been different had the sentencing court been presented with an expert opinion like Dr. Khazanov's.  The granting of relief under <u>Romero</u> is a discretionary decision, and there is no particular reason to think that the sentencing court would have exercised its discretion differently in the face of additional mental health evidence.

In sum, whether or not trial counsel could have or should have done a more thorough job of developing an evidentiary basis for a <u>Romero</u> motion on mental health grounds, the California Supreme Court's rejection of the <u>Strickland</u> claim cannot be considered an objectively unreasonable application of clearly established federal law.  Accordingly, federal habeas relief is unavailable.

## CONCLUSION

For all the reasons explained above, IT IS HEREBY ORDERED that the petition for writ of habeas corpus IS DENIED.

DATED: April 19, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE